# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

Joshua D. Ward, et al.,                              Case No. 3:13CV2210

         Plaintiffs

         v.                                                   **ORDER**

City of Norwalk, et al.,

         Defendants

This is a civil-rights case under 42 U.S.C. § 1983.

After their arrests for low-level misdemeanors and traffic offenses, the four plaintiffs in this case accumulated unpaid fines and court costs. When they failed to pay those fines and costs, the presiding Judge of the Norwalk, Ohio Municipal Court, defendant John Ridge, issued bench warrants for the plaintiffs' arrest. According to the plaintiffs, Judge Ridge then jailed them without holding a hearing to determine if they could, in fact, afford to pay the fines and costs.

Plaintiffs brought this suit on behalf of themselves and a class of all similarly situated persons in 2013.

Jurisdiction is proper under 28 U.S.C. § 1331.

Pending are counter-motions for summary judgment. (Docs. 57, 62). For the following reasons, I grant the defendants' motion and deny the plaintiffs' motion.

**Background**

Between January 3, 2012 and November 23, 2012, Judge Ridge issued arrest warrants for plaintiffs Joshua D. Ward, Jeremiah Stover, Larry Thornsberry, and Tammy Dewiel. In Ward's case, the basis of the warrant was his failure to pay fines that the court imposed in his underlying criminal case. In other plaintiffs' cases, the basis was the failure to pay fines as well as court costs.

Under Ohio law, a court may imprison a defendant who is able to pay a fine but refuses to do so. O.R.C. § 2947.14(A). For each day of his incarceration, a defendant earns a $50 credit against his fine. O.R.C. § 2947.14(D).

However, Ohio law (and, of course, the federal Constitution) forbids imprisoning a person who is unable to pay court costs. *Strattman v. Studt*, 20 Ohio St. 2d 95, 102–03 (1969); *State v. Lamb*, 163 Ohio App. 3d 290, 295–97 (2005); *Alkire v. Irving*, 330 F.3d 802, 816 (6th Cir. 2003).

Despite this plain and manifest prohibition, Judge Ridge, the plaintiffs claim, ordered them incarcerated, and did so without first determining whether they could pay their fines. Thereafter, Judge Ridge applied the excess credits plaintiffs had earned under § 2947.14(D) against their outstanding court costs.

Beginning in the second half of 2012, "Judge Ridge took steps to revise the process of collection of Court-imposed fines and court costs." (Doc. 60 at ¶3). He recalled arrest warrants that the court had issued in three types of cases: 1) failure to pay fines and costs; 2) failure to report to jail for not paying fines and costs; and 3) failure to appear for contempt hearings for unpaid fines and costs. (*Id.*).

Judge Ridge also "commenced a process of reviewing all cases in which a defendant was recorded as having served jail time for failure to pay Court-imposed fines and court costs." (*Id.* at

¶3). Acting *sua sponte*, Judge Ridge issued "Judgment Entries" that "applied credits for time served against outstanding fines and costs." (*Id.*).

The record shows that Judge Ridge issued Judgment Entries in Dewiel's, Thornsberry's, and Stover's cases. (Doc. 60 at 6–8). These documents state, in general, that "the defendant having been incarcerated for non-payment of fines, the defendant is credited [a different sum in each case] pursuant to Ohio Revised Code Section 2947.14." (*Id.* at 6) (internal emphases omitted). They also reflect the dismissal of the then-pending contempt citations against these plaintiffs.[1]

Judge Ridge retired on December 31, 2012. (Doc. 60 at ¶1). (The plaintiffs maintain that he served as a Visiting Judge after that date, but they cite no evidence to support that assertion.).

In May, 2013, Eric Weisenburger became the Presiding Judge of the Norwalk Municipal Court; in the November, 2013 election, Judge Weisenburger won a six-year seat on the bench. (*Id.* at ¶2). Judge Weisenburger established his own policies for collecting unpaid fines and court costs. According to the affidavit of defendant Pamela Boss, the Clerk of the Norwalk Municipal Court:

> At the time of sentencing a defendant who is ordered to pay a fine and/or court costs is informed and ordered to appear at a R.C. Section 2947.14 review hearing on a specified future date. The defendant is also informed that in the event the fine and/or court costs are paid in full prior to the review hearing, the hearing will not be held, and the defendant need not attend.
>
> If the fines and/or costs are not paid prior to the date of the review hearing, the hearing is convened on the specified date. If the defendant appears at the hearing, he/she is informed of the nature and the purpose of the hearing (that is, to inquire as to ability to pay the fines and/or court costs), and of the right to be represented by counsel . . .
>
> At the review hearing, the Court takes evidence as to the defendant's ability to pay the fines and costs previously imposed. If the Court determines that the defendant has

---

[1] A similar process occurred in Ward's case, though it was Judge Ridge's successor who filed that Judgment Entry.

the ability to pay the fines and/or costs, but has refused to do so, the Court will proceed to impose a sentence. In the sentencing judgment entry, the Judge typically recites a determination that the evidence introduced at the review hearing indicates the defendant has the ability to pay the fine. The Judge's articulated policy is to give credit to a defendant against the imposed fine at the statutory rate established by R.C. Section 2947.14 for any time served. However, in practice, no person has been jailed during Judge Weisenburger's tenure for non-payment of fines or court costs imposed by the Judge . . .

If the defendant is determined to lack the ability to [pay] the fine at the time of the review hearing, no action is taken against the defendant. Instead, another review hearing may be scheduled for a later time, and the defendant may be ordered to appear at another hearing, at which time any changes in circumstances affecting the defendant's ability to pay the fine will be reviewed and assessed.

If the evidence at the review hearing indicates the defendant has some ability to pay the fine and/or costs, the defendant is also given the option of entering into a payment plan with the Court in order to satisfy the fine and/or costs if he or she is determined to be unable to pay the fine in whole at the time of the review hearing.

In the event that a defendant fails to appear at any scheduled review hearing, the Court causes an Order to Appear and Show Cause to be issued to the Defendant. The Court never issues an arrest warrant for defendants who fail to appear for a review hearing, or who fail to pay fines and/or court costs in accordance with an agreed-upon payment plan. Under this Court's policy, defendants who fail to appear for the initial review hearing, or who fail to pay fines and/or court costs in accordance with an agreed-upon payment plan are never arrested. Instead they are ordered to appear for a Show Cause hearing.

If a defendant appears at a Show Cause hearing, a review hearing is conducted concerning the defendant's ability to pay the previously-ordered fines and/or court costs in accordance with the process et forth above. If the defendant fails to appear at the Show Cause hearing, an arrest warrant for failure to appear is issued. However, the arrest warrant is not for failure to pay fines and/or court costs, but instead for failure to obey the Court order to appear at the Show Cause hearing. Since Judge Weisenburger has been on the bench, no arrest warrants have been issued for failure to obey the order to appear at the Show Cause hearing, since no individual has failed to do so. He has never issued an arrest warrant because a defendant has failed to pay fines and/or court costs, or caused an individual to be arrested for that reason.

(Doc. 60 at ¶¶7a–7g).

According to Clerk Boss, "most individuals" who accrue courts costs and fines "enter into voluntary pay agreements at the time of sentencing." (*Id.* at ¶8). The Court "now utilizes the services of a collection agency to pursue payment of fines and costs on an as-needed basis." (*Id.*).

**B. Litigation**

Plaintiffs brought this suit in 2013. Their second amended complaint raised seven claims against Judge Ridge and Clerk Boss: 1) false arrest under § 1983; 2) false arrest under Ohio law; 3) imprisonment to collect a civil debt under § 1983; 4) breach of contract; 5) conversion; 6) unjust enrichment; and 7) declaratory and injunctive relief.

Earlier in the litigation I dismissed the Norwalk Municipal Court as a defendant. *Ward v. City of Norwalk*, 2014 WL 7175523 (N.D. Ohio). Thereafter, I granted Judge Ridge's and Clerk Boss's motions to dismiss for failure to state a claim and exercised my discretion not to adjudicate the state-law claims. *Ward v. City of Norwalk* 2014 WL 6982328 (N.D. Ohio).

Plaintiffs appealed, and the Sixth Circuit affirmed the dismissal of their claims for money damages against Judge Ridge and Clerk Boss in their official and individual capacities. *Ward v. City of Norwalk*, 640 F. App'x 462, 464–67 (6th Cir. 2016). The Circuit also affirmed the dismissal of plaintiffs' claim for injunctive relief. *Id.* at 467.

However, the court reversed the dismissal of plaintiffs' claim for declaratory relief against Judge Ridge and Clerk Boss. *Id.* at 467–68.

The Circuit, recognizing that this claim was "actionable only to the extent it seeks prospective relief," emphasized that the mere fact that "declaratory relief is available against state courts under § 1983 does not necessarily mean that such relief will be appropriate in every case":

> Limits on the judicial power of federal courts stemming from accepted abstention doctrines, see *Pulliam*, 466 U.S. at 539, and *Belill v. Hummel*, 835 F.2d 877, 1987 WL 24114, at *4 (6th Cir. 1987), and the *Rooker-Feldman* doctrine, *see Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005), may well counsel against granting relief in certain circumstances. Article III's case-or-controversy requirement, moreover, operates to ensure that declaratory relief is available only when a live controversy continues to exist. See *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

*Id.* at 468.

### Standard of Review

Summary judgment is appropriate under Fed. R. Civ. P. 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant must initially show the absence of a genuine issue of material fact. *Id.* at 323.

Once the movant meets that burden, the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. *Celotex*, *supra*, 477 U.S. at 324.

I accept the non-movant's evidence as true and construe all evidence in its favor. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992).

### Discussion

In their motion for summary judgment, defendants raise four arguments.

First, they contend that I should abstain from adjudicating plaintiffs' claim for prospective declaratory relief. According to the defendants, issuing a prospective declaratory judgment "affecting

state court operating practices is generally inappropriate and should be avoided on federalism grounds." (Doc. 58 at 11).

Second, defendants argue that plaintiffs' claim is moot because: 1) Judge Ridge voluntarily and without threat of litigation ceased the fine- and cost-collection practices at issue; 2) Judge Ridge is no longer in office; and 3) his successor, Judge Weisenburger, has replaced Judge Ridge's practices with constitutionally adequate ones. (*Id.* at 14–19).

Third, and for reasons similar to those undergirding their mootness argument, defendants assert that plaintiffs lack standing to pursue a prospective declaratory judgment.

Finally, defendants contend that the *Rooker-Feldman* doctrine deprives me of subject-matter jurisdiction over plaintiffs' claims.

**A. Standing**

Because standing is "a threshold requirement for federal jurisdiction," *Binno v. American Bar Ass'n*, 826 F.3d 338, 344 (6th Cir. 2016), I will consider that issue first.[2]

"To establish Article III standing, the plaintiff must allege that: (1) he has suffered an injury-in-fact that is both '(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical'; (2) the injury is fairly traceable to the defendant's conduct; and (3) it is likely that the injury will be redressed by a favorable decision." *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

There is no question plaintiffs had standing to pursue relief for past injuries that Judge Ridge's conduct inflicted on them: their allegedly illegal arrests and confinements are concrete

---

[2] The *Rooker-Feldman* doctrine likewise presents a threshold jurisdictional issue, but I agree with plaintiffs, for the reasons given in the reply in support of their summary-judgment motion (Doc. 65 at 11–12), that it does not deprive me of jurisdiction here.

7

injuries that flow directly from Judge Ridge's conduct, and a judgment in plaintiffs' favor would provide some measure of redress.

But plaintiffs must also "demonstrate separate standing to seek declaratory or injunctive relief focused on prospective harms." *Barber v. Miller*, 809 F.3d 840, 849 (6th Cir. 2015).

"Generally, past exposure to unlawful or unconstitutional behavior . . . does not give a person standing to request prospective injunctive relief to enjoin the behavior complained of absent a showing that he or she is likely to be exposed to similar unconstitutional behavior in the future." *Bouquett v. Clemmer*, 626 F. Supp. 46, 48 (S.D. Ohio 1985) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983)).

"[T]o have standing to seek an injunction against purportedly illegal future conduct by a state official, a plaintiff must show a real and immediate threat of injury." *Fleet v. Commonwealth of Kentucky Cabinet for Health & Family Servs.*, 2016 WL 1241540, *4 (W.D. Ky.).

Here, plaintiffs have not shown "a real and immediate threat" that they will be subject to the same injurious conduct about which they chiefly complain: an arrest or a term of imprisonment for failing to pay court costs. On that score, Clerk Boss's affidavit – which stands entirely uncontradicted – establishes these salient points.

- Since Judge Weisenburger assumed the bench, he has never issued an arrest warrant for any person, whether indigent or not, for failure to pay fines or court costs. (Doc. 60 at ¶7g).

- Furthermore, "no person has been jailed during Judge Weisenburger's tenure for non-payment of fines or court costs imposed by the Judge." (*Id.* at ¶7c).

- If Judge Weisenburger determines that a defendant has willfully refused to pay a fine, he will issue a judgment identifying the "evidence introduced at the review hearing indicat[ing] the defendant has the ability to pay the fine." (*Id.*).

- Consistent with O.R.C. § 2947.14(C) and (D), Judge Weisenburger may order the defendant jailed and direct that the defendant receive a $50-per-day credit against the outstanding fine. In practice, however, Judge Weisenburger has never issued such an order.

- Only if a defendant with unpaid "fines and/or costs" fails to attend both the initial review hearing *and* a subsequent show-cause hearing will Judge Weisenburger issue an arrest warrant. (*Id.* at ¶¶7f, 7g). Again, however, Judge Weisenburger has never issued such an arrest warrant. (*Id.* at ¶7g).

This evidence establishes as a matter of law that defendants who appear in the Norwalk Municipal Court do not face a "real or imminent" threat of incarceration (or even arrest) for failure to pay court costs. Whereas it was Judge Ridge's practice to issue arrest warrants and jail defendants without regard to their ability to pay, and to compound that offensive practice by applying any excess credits against defendants' outstanding court costs, it is now Judge Weisenburger's practice to refrain from those practices entirely.

Accordingly, plaintiffs do not have standing to pursue prospective declaratory relief.

Plaintiffs respond that Clerk Boss has, in fact, admitted that it is the Municipal Court's policy to "subject persons convicted of criminal offenses in that court to sentences of incarceration for failure to pay court costs." (Doc. 62 at 5).

But Boss's affidavit contains no such admission.

Plaintiffs rely on a sentence in paragraph 7c where Boss states that "[i]f the court determines that the defendant has the ability to pay the fines and/or costs but has refused to do so, the Court will proceed to impose a sentence." (Doc. 60 at ¶7c).

But that paragraph goes on to define the type of "sentence" Judge Weisenburger will impose.

According to Boss, the judgment entry will specify that "the evidence introduced at the review hearing indicates the defendant['s] ability to pay *the fine*," not court costs. (*Id.*) (emphasis

9

supplied). Boss also states that once the court imposes a sentence for willfully refusing to pay a fine, Judge Weisenburger will "give credit to a defendant against the *imposed fine* at the statutory rate [of $50 per day of incarceration] established by R.C. Section 2947.14[.]" (*Id.*) (emphasis supplied).

Plaintiffs' reading of Boss's affidavit is also inconsistent with Boss's testimony that Judge Weisenburger has not, in more than three years on the bench, issued a single arrest warrant or jailed a single defendant for failing to pay outstanding court costs. And because there is no evidence that Judge Weisenburger has jailed a defendant for failing to pay a fine, there is likewise no evidence that the judge has applied any excess credits that a defendant earned under O.R.C. § 2947.14(D) against outstanding court costs.

Finally, there is no merit to plaintiff Thornsberry's contention that, even if the other plaintiffs lack standing, he has standing to pursue prospective relief. (Doc. 62 at 7).

Thornsberry observes that, as of April, 2015, "court costs in the form of a vague 'collection agency fee' are continuing to accrue on many of [his] criminal cases." (*Id.*). Accepting that as true, however, does nothing to show that Thornsberry faces a real likelihood that his unpaid costs and "collection agency fees" will, given the practices described above, result in his arrest or incarceration.

In sum, the undisputed facts show that, after a change in leadership at the Norwalk Municipal Court, defendants who appear there face no risk of an arrest for unpaid court costs. Moreover, only those defendants who are able to pay a fine, but willfully refuse to do so, are at risk of a jail term. Accordingly, plaintiffs have not established they are at imminent risk of harm, and they lack standing to pursue a prospective declaratory judgment.

**B. Mootness**

For similar reasons, I agree with the defendants that this case, and its lone remaining claim for prospective relief, is moot.

A case is moot when "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 584 (6th Cir. 2006). A case also becomes moot "when subsequent events make it absolutely clear that the allegedly wrongful behavior cannot reasonably be expected to recur and interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Cleveland Branch, N.A.A.C.P. v. City of Parma, Ohio*, 263 F.3d 513, 530–31 (6th Cir. 2001) (internal quotation marks omitted).

Even if a case is moot, review is available if "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Speer v. City of Oregon*, 847 F.2d 310, 311 (6th Cir. 1988).

Judge Ridge, the sole practitioner of the wrongful practice giving rise to this case, is gone and not coming back. His successor, Judge Weisenburger, now in office for three-and-a-half years, has formalized and continued to implement constitutionally adequate reforms such that no plaintiff even alleges he's been doing anything wrong. They suggest no reason to fear, if I decline to make *de jure* this court's *de facto* oversight of the past three years, that Judge Weisenburger someday will go rogue.

Not only have the plaintiffs failed to claim that Judge Weisenburger has revived past practices, Clerk Boss testified that he has not issued a single arrest warrant, or ordered a single

defendant jailed, for an unpaid fine or unpaid courts costs during his three-and-a-half years on the bench. (Doc. 60 at ¶¶7c, 7g). Plaintiffs have introduced nothing to contradict this evidence, evidence that establishes the defendants have "eradicated the effects of the allegedly [unlawful] conduct." *City of Parma*, *supra*, 263 F.3d at 532.

Furthermore, review is not available under the capable-of-repetition-yet-evading-review exception. Judge Weisenburger's policies preclude the very practices that spawned this litigation, and plaintiffs cannot point to any instance where Judge Weisenburger issued an arrest warrant for unpaid fines or courts costs – let alone a case where he ordered a defendant jailed for not paying a fine or court costs.

For these reasons, the case is moot.

### C. Abstention

Finally, even assuming that plaintiffs had standing, and that this case presented a live controversy, I would abstain from adjudicating the plaintiffs' claim.

"Relying on the principles of federalism," the Sixth Circuit has held that "'absent extraordinary circumstances' federal courts 'must abstain from granting declaratory or injunctive relief because doing so would involve unduly intrusive interference with, and monitoring of, the day-to-day conduct of state hearings and trials.'" *Belill v. Hummel*, 835 F.2d 877, *4 (6th Cir. 1987) (quoting *Sevier v. Turner*, 742 F.2d 262, 270 (6th Cir. 1984)); *accord Tindall v. Wayne Cnty. Friend of Court, by Schewe*, 269 F.3d 533, 539 (6th Cir. 2001) (discussing "this Circuit's well-settled rule that federal courts . . . must abstain from granting declaratory or injunctive relief" against state courts).

In *Parker v. Turner*, 626 F.2d 1, 10 (6th Cir. 1980), the court explained that if a litigant can show that state courts are "unable or willing to correct continuing unconstitutional conduct by the [state] court judges, plaintiffs would then be in a position of showing 'exceptional circumstances' which would warrant federal injunctive [or declaratory] relief." (Internal brackets supplied).

These cases counsel against my interfering in the day-to-day proceedings in the Norwalk Municipal Court.

Most importantly, plaintiffs have not shown that Judge Weisenburger is "unable or unwilling to correct continuing unconstitutional conduct" in his courtroom. *Parker*, *supra*, 626 F.2d at 10. Indeed, the only evidence in the record is that Judge Ridge's practices are no longer in force, and that Judge Weisenburger has adopted his own policies that all but ensure that unpaid court costs do not lead to arrests or incarceration.

In these circumstances, there is simply no need to inject myself into the Norwalk Municipal Court as it seeks to collect unpaid fines and court costs in a manner that comports with the federal Constitution and Ohio law.

**Conclusion**

One final note: a one-judge court and its small staff have, no doubt, not enjoyed this litigation. From a practical standpoint, in addition to the factors I've recited above, I believe firmly that it is highly unlikely that anyone – including Judge Weisenburger and his successors – would under any circumstances do anything that might possibly lead to similar unpleasantness. It was not a good day for the Norwalk Municipal Court when this federal court first came to call.

That certainly having been so, I am entirely satisfied and confident there is no cognizable risk that anything will occur in that courthouse that will lead to a return call from this courthouse.

There being neither basis nor need for the requested relief, it is, accordingly

ORDERED THAT:

1. Defendants' motion for summary judgment (Doc. 57) be, and the same hereby is, granted; and

2. Plaintiffs' motion for summary judgment (Doc. 62) be, and the same hereby is, denied.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge